ELECTRONICALLY FILED
2013-Jul-30 14:52:03
60CV-13-2981

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

LINDA LEVERETT                                                   **PLAINTIFF**

VS.                              NO. _____

METROPOLITAN LIFE INSURANCE COMPANY                **DEFENDANT**

## COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT

### I. Introduction

1.      Linda Leverett brings this action to recover benefits under a long term disability

insurance policy and to obtain other relief under the Employee Retirement Income Security Act

("ERISA"), 29 USC 1001, et seq.  Pursuant to ARCP 10(d), the letter denying Plaintiff's claim is

attached.  Defendant has not provided the policy.  This action is also a cause of action for breach

of contract and declaratory judgment.

### II. Parties

2.      Linda Leverett ("Leverett") is currently a resident of Pulaski County, Arkansas,

and was a resident of Pulaski County, Arkansas, at the time of the loss described herein.

3.      Metropolitan Life Insurance Company ("MetLife") is a foreign corporation.

According to records on file with the Arkansas Insurance Department, the registered agent for

service of process for this defendant is CT Corporation System, 124 W. Capitol Avenue, Suite

1900, Little Rock, AR 72201.

### III. Jurisdiction & Venue

4.      This court has jurisdiction of the claim under ERISA, 29 USC 1132(e)(1), which

states that the state courts of competent jurisdiction and district courts of the United States shall

have concurrent jurisdiction of a civil action brought by a participant or beneficiary to recover

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, and to clarify his rights to future benefits under the terms of the plan.

5.      This court is the proper venue under ACA 23-79-204, which states that an action brought by an insured against an insurer as to a loss occurring under an insurance policy shall be brought in either the county in which the loss occurred or the county of the insured's residence at the time of the loss. Leverett was a resident of Pulaski County, Arkansas, at the time of the loss described herein.

### IV. Facts

6.      Leverett was employed by Rebsamen Medical Center Plan.

7.      Leverett was a covered person under the Plan.

8.      The Plan included an insurance policy, issued by MetLife, which provided a short term disability ("STD") and long term disability ("LTD") benefits.

9.      Leverett became disabled and has been adjudicated disabled by the Social Security Administration pursuant to 216(i) and 223(d) of the Social Security Act. Specifically, Plaintiff has degenerative disc disease, post-traumatic stress disorder and major depressive disorder.

10.     By letter dated April 1, 2013, MetLife denied Leverett's claim for benefits.

11.     Leverett timely appealed MetLife's denial of her claim, in accordance with the terms of the Plan and ERISA's claims procedure regulations, 29 CFR 2560.503-1. Leverett submitted records and comments for MetLife's consideration.

12.     By letter dated April 1, 2013, MetLife denied Leverett's appeal for benefits. MetLife wrote that Leverett had exhausted her administrative remedies under the Plan and that no further appeals would be considered.

## V. Improper Termination of Benefits under ERISA

13.     All allegations herein are incorporated in this count.

14.     Leverett is disabled and is entitled to benefits under the terms of the Plan.

15.     The defendant incorrectly, unreasonably, and arbitrarily and capriciously, denied Leverett's claim and appeal for benefits, even though the defendant was presented with evidence that Leverett was disabled.

16.     Pursuant to ERISA, 29 USC 1132(a)(1)(B), Leverett, as a participant or beneficiary of the Plan, may bring an action to recover benefits due to her under the terms of the Plan, to enforce her rights under the terms of the Plan, and to clarify her rights to future benefits under the terms of the Plan.

17.     Pursuant to ERISA, 29 USC 1132(g), the court in its discretion may allow a reasonable attorney's fee and costs of action to Leverett.

18.     Plaintiff requests a declaratory judgment against Defendant to be ordered to receive benefits.

## VI.  Jury Trial

19.     Leverett demands a jury trial of any issue triable of right by a jury.

## VII.  Prayer for Relief

WHEREFORE, Leverett prays that the Court enter judgment, in an amount in excess of that required for federal court jurisdiction in diversity of citizenship cases, in her favor and against the defendant, for all damages suffered and all other damages and relief allowed by law, including without limitation: (1) a judgment requiring the defendants to pay all benefits accrued by Leverett and unpaid as of the date of the judgment, with interest; (2) a declaratory judgment that Leverett is entitled to receive the payment of benefits from the date of the judgment forward

until she becomes no longer entitled to receive those benefits under the terms of the Plan; and (3)

an order requiring the defendant to pay reasonable attorney's fees and costs.

Respectfully submitted,

John Ogles
Arkansas Bar No. 89003
Texas Bar No. 00797922
OGLES LAW FIRM, P.A.
200 S. Jeff Davis
P.O. Box 891
Jacksonville, AR 72078
(501) 982-8339
jogles@aol.com

Metropolitan Life Insurance Company                    1

**MetLife®**

MetLife Disability
PO Box 14592
Lexington, KY  40511-4592

NOT FOR SERVICE OF LEGAL PROCESS

April 1, 2013

Ogles Law Firm, P.A.
200 S. Jeff Davis-P.O. Box 891
Jacksonville, Arkansas 72078

Attn: John Ogles

Re: Long Term Disability
Claimant: Linda Leverett
Claim: 671203156777
Employer: Rebsamen Medical Center

Dear Mr. Ogles:

MetLife has reviewed the termination of your client's Long Term Disability (LTD) benefits under the Rebsamen Medical Center LTD Plan. For the reasons detailed below, we are upholding the termination of Ms. Leverett's claim based on our conclusion that she did not continue to satisfy the Plan's Definition of Disability. The information provided lacked clinical evidence documenting a severity of symptoms due to a physical and/or psychiatric condition that caused restrictions or limitations preventing her from preforming the duties of her job/occupation as a CT technician. As such, we have determined that Ms. Leverett did not demonstrate that she was unable to earn 80% of her Pre-disability Earnings at her Own Occupation for any employer in her Local Economy beyond March 20, 2012. It was further found that she was not under appropriate care and treatment for her physical and or psychiatric conditions beyond March 20, 2012.

According to the employer's Long Term Disability Plan, disabled is defined as:

"Disabled or Disability means that, due to Sickness or as a direct result of accidental injury:

- You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and

- You are unable to earn 80% of Your Predisability Earnings at Your Own Occupation for any employer in Your Local Economy."

"Appropriate Care and Treatment means medical care and treatment that is:

EXHIBIT A

RP130401298J1_1-2-7

2

- Given by a Physician whose medical training and clinical specialty are appropriate for treating Your Disability;

- Consistent in type, frequency and duration of treatment with relevant guidelines of national medical research, health care coverage organizations and governmental agencies;

- Consistent with a Physician's diagnosis of Your Diagnosis; and

- Intended to maximize Your medical and functional improvement."

The Plan further states:

"Date Benefit Payment End

Your Disability benefit payments will end on the earliest of:

- The date You are no longer Disabled."

We have reviewed Ms. Leverett's entire claim file. She last worked as a CT technician for Rebsamen Medical Center on September 5, 2011 due to, but not limited to, depression, post-traumatic stress disorder (PTSD), forgetfulness, insomnia, lumbar degenerative disc disease, low back pain, left leg numbness, gait disturbance, sciatica and left hip pain. According to the job description provided by her employer, the physical requirements were noted but not limited to standing/walking/bending over/reaching above shoulder level/pushing/pulling for 7-8 hours, twisting/crouching/stooping for 5-6 hours, sitting/kneeling/balancing 1-2 hours. Lifting and carrying up to fifty pounds occasionally and up to ten pounds continually. In addition, this position required being around equipment and/or machinery. Interpersonal relationships skills were also required as well as there may be stressful situations.

According to her file, the date of disability was September 6, 2011. She received LTD benefits from March 6, 2012 through March 20, 2012. By our letter dated July 3, 2012, MetLife terminated her benefits and explained that the medical documentation provided for review did not support continued functional limitations and restrictions that prevented her from performing the duties of her own occupation. Therefore, she no longer met the employer's Plan's Definition of Disability. She was provided the right to submit a timely appeal request. On July 16, 2012, Metlife received your client's request for an appeal. She stated it was difficult for her to get additional medical reports as she no longer had insurance. However, she did obtain new reports and submitted them for review. By letter dated October 12, 2012, Metlife advised Ms. Leverett the medical information provided did not support that she was under appropriate care and treatment beyond March 20, 2012 for her physical diagnosis. It was further determined that the medical documentation on file did not support functional limitations beyond March 20, 2012 regarding her psychiatric diagnoses. Therefore, the original determination to terminate LTD benefits beyond March 20, 2012 was upheld in accordance with the Plan provisions. Because her claim was denied in whole or in part she was provided with the opportunity to request another review by submitting a written request along with any additional information that was not previously provided.

On November 29, 2012, we received your letter stating Ms. Leverett was appealing the decision to terminate her claim and that she was disabled and entitled to benefits. No additional information was submitted for review.

All information regarding Ms. Leverett's claim has been carefully reviewed including everything received prior to the initial claim and appeal decision as well as the information submitted in support of this appeal review. The entire claim file was referred for review by two independent physician consultants (IPC) one Board Certified in Orthopaedic Surgery and one Board Certified in Psychiatry. We asked the IPC(s) to offer an opinion in their area of expertise as to whether the medical information contained in her file provided clinical evidence of functional limitations and restrictions that would support the period beyond March 20, 2012. We also asked them to offer an opinion regarding whether or not she was under appropriate care and treatment beyond March 20, 2012.

The IPC Board Certified in Orthopaedic Surgery spoke with Ms. Leverett's treating physician, Dr. Daugherty and attempted to speak with Dr. Fewell. Messages were left and no return calls were received.

The Orthopaedic IPC stated he discussed Ms. Leverett's physical conditions since March 20, 2012 with Dr. Daugherty. Dr. Daugherty advised the consultant that he last saw her on November 2, 2012 and she was diagnosed with sciatic and gait disturbance and when she was seen on October 30, 2012 he noted a positive straight leg raise at 30 degrees and an increased patellar reflex on the left. There were no neurological deficits. X-rays, which were first mentioned in the record on November 21, 2011 showed moderate degenerative disease at L4-L5. Dr. Daugherty confirmed that Ms. Leverett had not had a follow up MRI or seen a specialist for her spine. The IPC asked Dr. Daugherty about restrictions and limitations and the cause for restrictions and limitations. The IPC noted Dr. Daugherty explained that her back problems were the main reason that she couldn't work if psychiatric issues were resolved. Dr. Daugherty opined she could lift/carry 0 to 10 lbs. frequently, 11 to 20 lbs. occasionally, stand and walk 2 hours maximum. Her medications were Prozac and Ibuprofen for her back. She was not on a narcotic and she had no adverse reaction to medication to Dr. Daugherty's knowledge.

The Orthopaedic IPC concluded, for the time period under review, no physical impairment was supported. The IPC also opined she did not receive appropriate care and treatment. The IPC explained the medical information available was not adequate to support any restrictions and limitations due to her physical conditions. Regards to the back problems, these were spotty and vague in the reports from Dr. Daugherty's office. There were no clinical notes in the record from Dr. Fewell and the IPC stated he could not tell the reason for his involvement in her care. Ms. Leverett's description of her back pain was quite vague with no neurological deficits. The IPC stated only when he spoke to Dr. Daugherty did he talk about a positive straight leg raise. He said that she had moderate degenerative changes in the lumbar spine but, when Dr. Daugherty spoke to Dr. McArthur, he told her that the changes were only mild. There doesn't appear to have been a new X-ray since November 21, 2011 and no follow up MRI(s) and no specialist referral(s) and, while MRI(s) and specialist(s) referrals weren't always necessary, the IPC opined if someone had badly enough back pain that prevented work, then these things were indicated. The IPC also opined an Independent medical exam by a back specialist or being seen by a back specialist selected by Dr. Daugherty

may be appropriate The IPC also stated while he was not a psychiatrist, it appeared that Ms. Leverett had significant psychiatric issues which appeared to influence her problems with pain. She was also obese and deconditioned and, apparently, had not exercised; at least according to her person profile she completed on April 5, 2012. In addition, the IPC stated based on the information provided for review there was no attempt at treating her physical conditions with physical therapy. In addition, the IPC opined she did not receive appropriate care and treatment as there was no attempt at rehabilitation, no referral to a specialist and there were no MRI follow ups done. The IPC concluded there was no clinical evidence to support restrictions and limitations from a physical condition(s) and/or side effects from medications for the time period beyond March 20, 2012.

On January 30, 2013, the Orthopaedic IPC report was faxed to Drs. Daugherty and Fewell. We asked that they review the report and offer any comments they felt necessary by February 13, 2013. A copy of the report was also sent to you for your records. No responses were received.

On March 6, 2013 the IPC Board Certified in Psychiatry spoke with Dr. Doyle. Dr. Doyle stated he last saw Ms. Leverett in March 2012. He had no records to review as they were in storage and stated that he was fired by Ms. Leverett because he advised her that she could do other work. The IPC stated there was no further data available. Also, on March 6, 2013, the IPC spoke with Mr. Wolfe (therapist). Mr. Wolfe reported that he first saw Ms. Leverett in the summer of 2012 at which time she complained of anger and depression. She was last seen end of February 2013. Mr. Wolfe stated she was okay but had mood issues. Presentation was variable but overall she was neat and hygiene was okay. He also stated Ms. Leverett reported that she did not shower but, she was globally intact, cognition was also grossly intact. She reported homicidal feelings in the past with no intent, while working in the hospital. There was no suicidal ideation or psychosis present. The IPC noted Mr. Wolfe indicated that he could not and would not comment on work ability and stated that return to work issues were not discussed in session and that he did not know who took Ms. Leverett off work. Further, he reported he did not complete forms and whether or not Ms. Leverett was compliant with psychotropics medications that would need to be discussed with the treating physician. The IPC noted no further information was available.

The Psychiatry IPC concluded, for the time period under review no psychiatric impairment was supported. The IPC also opined it was unclear what form of treatment Ms. Leverett received as the data was scattered and poorly comprehensive. The IPC explained the medical information was scattered and contained some nonconventional data, such as forms suggested to be a least overwritten or even completed by Ms. Leverett, and signed by the therapist. The IPC stated Ms. Leverett may be angry and disagreeable yet that was not sufficient to establish the presence of a globally impairment from a psychiatric condition that would preclude function or work. The IPC also noted narrative notes were poorly comprehensive and contained subjective and self-reported data with no comprehensive or mental status examinations. There also was no evidence of active or aggressive pharmacotherapy, treatment or more intense levels of care or grounds for justification for the diagnosis of PTSD. The IPC explained the record did not detail global functioning nor was there evidence of a formal thought disorder, treatment with antipsychotic medications, homicidal ideation that required an assessment, psychological testing, measured cognitive dysfunction, or observed aggressive behavior. The IPC further stated the data suggests Ms. Leverett harbors

5

anger and resentment in the context of her prior employer but that would not be sufficient to establish a functional impairing mental illness. Therefore, the IPC opined the records available did not support psychiatric functional restrictions and limitations and it was unclear what forms of treatment Ms. Leverett received as the data provided was scattered and poorly comprehensive. Also, it was unclear if she was taking psychotropic medications for the time period under review.

On March 12, 2013, the Psychiatrist IPC report was faxed to Dr. Doyle and Mr. Wolfe (therapist). We asked that they review the report and offer any comments they felt necessary by March 26, 2013. A copy of the report was also sent to you for your records. No responses were received

In summary, benefits must be administered in accordance with your client's employer's LTD plan and this requires that the disability is defined and medically substantiated by her health care providers with comprehensive and specific information. To continue to be eligible for LTD benefits, Ms. Leverett must provide medical evidence of an inability to earn 80% of her Pre-disability Earnings at her Own Occupation for any employer in her Local Economy. We acknowledge and have considered your request for appeal on behalf of Ms. Leverett and your opinion that she was disabled and entitled to benefits. We also considered her treating physicians opinions. However, the IPC specializing in Orthopaedic and Psychiatry reviewed the entire claim file, and concluded that the medical information provided did not support any impairment from a physical and or psychiatric condition(s) beyond March 20, 2012. In addition, the IPC(s) concluded that for the time period under review, the medical evidence provided did not support that Ms. Leverett was under appropriate care and treatment for either a physical and/or psychiatric condition.

While we do not discount that Ms. Leverett may experience symptoms from her conditions for which she may take medication to alleviate, the medical documentation on file does not substantiate that the symptoms were causing her functional restrictions and limitations preventing her from performing her own occupation as a CT technician, particularly continuously beyond March 20, 2012 forward.

In conclusion based on all the evidence in the file, taking into consideration the opinion of the IPC(s), we have concluded that the medical information provided did not support that she was under appropriate care and treatment beyond March 20, 2012.. It was further determined that the medical documentation on file did not support functional limitations or restrictions beyond March 20, 2012 regarding her physical and/or psychiatric conditions. Therefore, Ms. Leverett was not precluded from being able to earn 80% of her Pre-disability Earnings at her Own Occupation. Therefore, we have determined that she did not meet the Plan's Definition of Disability and the decision to terminate her LTD benefits beyond March 20, 2012 was appropriate.

Upon request, MetLife will provide you and/or Ms. Leverett with a copy of the documents, records, or other information we have that were relevant to her claim and identify any medical or vocational expert(s) whose advice was obtained in connection with her claim. She also has the right to bring civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974.

Ms. Leverett has exhausted her administrative remedies under the Plan, therefore, no further appeals will be considered.

6

Sincerely,

*Jackie Stachnik*
Appeals Specialist
Met DisAbility
(800) 300-4296

RF230012983_1-7-7