**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**LINDA LEVERETT** **PLAINTIFF**

**v.** **CASE NO. 4:13CV00555 BSM**

**METROPOLITAN LIFE**
**INSURANCE COMPANY** **DEFENDANT**

**ORDER**

Plaintiff Linda Leverett's motion for a judgment on the pleadings [Doc. No. 9] is denied, and this case is dismissed with prejudice.

I. FACTUAL BACKGROUND

Leverett was employed at Rebsamen Medical Center from December 1974 until September 2011. Rebsamen maintained an employee welfare benefit plan which was insured and administered by the Metropolitan Life Insurance Company ("MetLife"). The plan provides coverage for both short-term disability ("STD") and long-term disability ("LTD"), and is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

Leverett requested STD coverage on October 18, 2011, because she suffered from "stress, anxiety, anger and depression" which left her unable to concentrate and perform her job functions. At that time, Leverett was being treated by Dr. Joe Daugherty, her primary care physician, and Dr. Robert Doyle, her psychologist. MetLife approved Leverett's claim for STD benefits from September 6, 2011, to September 26, 2011. Leverett was notified that if she remained disabled beyond September 26, 2011, she would have to submit additional

medical documentation to receive further benefits. She was also informed that if she did not provide the additional information by November 15, 2011, her STD claim may be closed. MetLife notified Leverett on November 23, 2011, that it was closing her file because she had not filed additional information.

On February 13, 2012, Leverett applied for LTD benefits, and over the next several months began submitting medical information to MetLife. At MetLife's request, Daugherty submitted records detailing Leverett's psychological issues, as well as her sciatica and other orthopedic issues. A November 21, 2011, record specifically stated that Leverett "would be a danger in the workplace due to mental and physical disability", and recommended Leverett not return to work at that time. In a separate medical certification form dated February 17, 2012, Daugherty reiterated his view that Leverett should not return to work. After visiting with Leverett on November 29, 2011, Doyle noted that Leverett "needs to work" and should "possibly retrain in another area within the hospital." On March 20, 2012, however, Doyle noted that Leverett had "regressed" due to her being upset with MetLife's handling of her claim.

After several phone conversations with Leverett and a review of her medical file, a MetLife claims specialist concluded that Leverett's disability claims should be denied. MetLife contacted Dr. Peter Sugerman, an independent physician, and asked him to review Leverett's file. After reviewing the record and speaking with Doyle, Sugerman concluded that Leverett had "significant functional limitations . . . [h]owever, ambiguity exists

regarding the cause." Sugerman further noted that while the duration of the impairment was three months, he could not verify that it was caused by any psychiatric condition. In a follow-up letter, Sugerman added that a change in Leverett's workplace environment would be a "minor intervention" because "[s]he is at risk to display anger problems anywhere."

MetLife notified Leverett on July 3, 2012, that it was approving her LTD benefits request. The notice explained that the benefits became payable as of March 6, 2012, but her eligibility for them terminated on March 20, 2012, meaning Leverett would receive only two weeks' worth of payments. MetLife justified its decision by noting that Leverett had failed to provide any medical documentation showing she continued treatment beyond March 20, 2012, and that there were no clinical records indicating continued social impairment.

Leverett appealed MetLife's decision by fax on July 16, 2012, stating that her hiatus from treatment was caused by her lack of insurance due to her inability to afford COBRA premiums. The fax also contained a medical assessment from Daugherty, stating that Leverett suffered from post-traumatic stress disorder as well as orthopedic problems which limited her mobility. On July 18, 2012, Leverett submitted a second medical assessment from Dr. Ron Fewell, noting that Leverett suffered from back problems that inhibited her ability to walk. Fewell also stated that Leverett's "social interaction" was affected by her impairment. Finally, on July 20, 2012, Leverett faxed MetLife a form from Professional Counseling Associates, stating that Leverett had attended a counseling appointment that day.

An appeals specialist for MetLife noted that while Leverett submitted new

information in July, there was nothing on file showing that Leverett was disabled from March until July. On August 15, 2012, the specialist contacted Leverett to attempt to obtain this information, but Leverett never returned MetLife's phone calls. MetLife next contacted Dr. Karen MacArthur and Dr. Randy Rummler, both independent physicians, and asked them to review Leverett's file. MacArthur was tasked with reviewing the physical disability aspects of Leverett's claim, while Rummler focused on Leverett's mental impairments.

MetLife asked MacArthur whether Leverett received "appropriate care and treatment" for her impairment. MacArthur responded that Leverett's "[o]rthopedic complaints do not appear to have received focused treatment." MacArthur also noted that Leverett would be capable of sitting in the workplace for an eight hour day, as long as she was given breaks to stand and stretch, but that standing and walking should be limited to two hours per day. She further stated that the degree of Leverett's complaints "appear[ed] out of proportion to the objective physical findings on x-ray." Finally, MacArthur observed that Leverett had not yet attended physical therapy, had not been prescribed any anti-inflammatory drugs for her pain, and that Leverett's care appeared to focus on her "mental health concerns." In a later addendum to her report, MacArthur stated her opinion was unchanged, and that based on the record "there was no documentation provided to indicate that the claimant's orthopedic complaints were receiving appropriate care and treatment . . ."

In his assessment concerning Leverett's mental impairments, Rummler stated that Leverett was receiving appropriate care for her psychological issues. MetLife asked

Rummler if Leverett's file supported a finding of disability beyond March 20, 2012. Rummler opined that "[t]here is inadequate information to support functional limitations" beyond that date. Although he acknowledged that Leverett submitted information stating she was again receiving counseling as of July, Rummler noted that there were "no records to review in terms of nature, frequency, or extent of such treatment." In an addendum to his report, Rummler stated that while it appeared Leverett was receiving therapy from Professional Counseling Associates "1-2 times per month", this reflected a "lack of acuity" and his original assessment was unchanged.

On October 12, 2012, MetLife informed Leverett that it was upholding its prior decision to deny LTD benefits beyond March 20, 2012. MetLife stated that Leverett failed to receive appropriate care and treatment for her orthopedic issues, as required by the benefits plan. It also noted that there was insufficient evidence to show there were any "psychiatric functional limitations" beyond March 20, 2012.

Leverett appealed again on November 29, 2012, but submitted no new information. MetLife sent Leverett's file to Dr. Richard Bolt, an orthopedist, to review. After reviewing the record and consulting with Daugherty, Bolt concluded that the "[m]edical information available is not adequate to support any restrictions and limitations that are physical" and that Leverett's claims of back problems were " very spotty and vague." Bolt noted that Leverett had not received appropriate care and treatment, as she had not attempted rehab, had not been referred to a specialist, nor received an MRI. Bolt recommended an independent medical

exam or referral to a specialist to get to the root of Leverett's issues.

MetLife engaged Dr. Marcus Goldman, a psychiatrist, to conduct an independent psychiatric review of the record. Goldman reviewed the record and spoke to Doyle and one of Leverett's therapists. Goldman found that nothing supported a finding of any functional psychiatric limitations beyond March 20, 2012. He noted that the record was scattered, and "contain[ed] some very nonconventional data, such as forms suggested to be at least overwritten or even completed by the claimant, and signed by the therapist." While he acknowledged Leverett's anger issues, Goldman noted that this did not rise to the level of a "functionally impairing mental illness." When asked whether Leverett received appropriate care or treatment, Goldman stated that it was unclear what treatment and medication Leverett received due to the poor quality of the record.

After reviewing Leverett's file and the reports of Bolt and Goldman, MetLife upheld its prior decisions and denied additional LTD benefits. MetLife informed Leverett of its decision on April 1, 2013, and notified her that she had exhausted all of her remedies under the plan. Leverett filed this ERISA claim seeking additional benefits and now moves for judgment on the pleadings

## II. LEGAL STANDARD

MetLife's decision to deny LTD benefits to Leverett is reviewed to determine whether MetLife abused its discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). This is true because the benefits plan gave the administrator discretionary authority

to determine eligibility for benefits and to construe the terms of a plan. Consequently, if MetLife's decision is supported by a "reasonable explanation", it should not be overturned "even if another reasonable, but different, interpretation may be made." *Coker v. Metropolitan Life Ins. Co.*, 281 F.3d 793, 797 (8th Cir. 2002). A reasonable decision is one "supported by substantial evidence, which is more than a scintilla, but less than a preponderance." *Willcox v. Liberty Life Assur. Co. of Boston*, 552 F.3d 693, 700 (8th Cir. 2009). Therefore, the question presented is not whether a reasonable person would have reached the same decision reached by MetLife, but rather, whether a reasonable person could have reached a similar decision. *Ferrari v. Teacher's Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002).

## III. DISCUSSION

Leverett's motion for judgment on the pleadings is denied because a reasonable person could reach the same decision reached by MetLife. As MetLife highlights in its brief in opposition to Leverett's motion for judgment, Leverett failed to submit documentation supporting disability between March 20, 2012 and July 16, 2012, and the information submitted by Leverett in July was insufficient to establish a claim for LTD benefits. Indeed, although Dr. Sugerman found that Leverett suffered from "significant functional limitations", he expressed ambiguity as to the cause of Leverett's condition. Dr. MacArthur found that Leverett was not receiving proper care and treatment for her orthopedic issues, and Dr. Rummler could not determine whether she had psychological functional limitations beyond

March 20, 2012. Dr. Bolt found that there was inadequate information to support a finding of physical disability. Dr. Goldman questioned whether Leverett received adequate psychiatric treatment, but concluded that her anger issues did not rise to the level of a "functionally impairing mental illness." All told, MetLife received opinions from five independent physicians, all of whom were skeptical regarding either the veracity of Leverett's claims, the source of her ailments, or the appropriateness of her treatment. Based on these facts, a reasonable person could have decided to deny benefits.

Leverett argues that MetLife stripped her of her benefits although there was not a significant change in circumstances to warrant a denial. Leverett also contends that MetLife switched its basis for denial of benefits depending on what best suited MetLife at the time the benefits were denied. Leverett further argues that MetLife should have considered the fact that the Social Security Administration awarded disability benefits to her. Finally, Leverett argues that MetLife's decisions were tainted by a conflict of interest because it was both the administrator and payor under the plan. Even when all of these arguments are considered, Leverett still cannot show that MetLife abused its discretion because, even if neither of the conditions outlined by Leverett existed, a reasonable person could have reached a result similar to the one reached by MetLife. While Leverett's situation is unfortunate, the fact remains that substantial evidence exists that MetLife's decision was reasonable. Accordingly, Leverett's motion for a judgment on the pleadings is denied.

## IV. CONCLUSION

For the reasons stated above, Leverett's motion for a judgment on the pleadings [Doc. No. 9] is denied, and this case is dismissed with prejudice.

IT IS SO ORDERED this 7th day of February 2014.

UNITED STATES DISTRICT JUDGE